UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LARRY K. SAUVE, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 2:11-cv-00349-JAW |
| | ) |
| KEVIN JOYCE, et al., | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION**

Larry Sauve, an inmate at the Cumberland County Jail, sued Kevin Joyce, the Sheriff of Cumberland County, and Joseph Ponte, the Commissioner of Corrections, complaining about the availability of legal research tools at the Cumberland County Jail. Ponte and Joyce have both responded to the law suit by filing a motion to dismiss. (Doc. Nos. 16 and 20.) Sauve has responded to Ponte's motion to dismiss with his own motion to amend the complaint, seeking to add allegations relating to the Department of Corrections, add Major Francine Breton as a defendant, and describe ongoing problems Sauve is experiencing at the Cumberland County Jail. (Doc. No. 22.) All three motions have been referred to me for a recommended decision. I now recommend that the Court grant the Sheriff's and the Commissioner's motions and deny Sauve's motion to amend as futile.

**THE ALLEGATIONS**

In the original complaint, Sauve indicated that he "made numerous requests for case law and notary, copies, a pen to write legal work with, and then made numerous requests for a grievance form." According to Sauve he "gained a little," but "its still an exercise in patience

and frustration to accomplish the simplest of actions." (Compl. ¶ II.C., Doc. No. 1.) Sauve elaborates that he came to Portland, Maine on July 7, 2011, on a Governor's Warrant from Anchorage, Alaska, allegedly for violating his probation. Sauve contested the extradition and while still in Alaska he went to the law library every day and researched his case. He attempted to bring a federal habeas corpus in the federal court in Anchorage, Alaska. He got rid of his "unwanted counsel" and pursued his legal rights by accessing the courts. (Id. ¶ IV).

On November 18, 2011, Sauve filed a motion to amend his complaint. (Doc. No. 22.) In his proposed amended complaint, Sauve seeks to add Francine Breton, Superintendent of the Cumberland County Jail, as a defendant and he also requests, in addition to the injunctive relief previously mentioned, monetary damages in the amount of $100,000.00. (Proposed Am. Compl. ¶¶ III.C, V, Doc. No. 22-1.) The Statement of Claim and supplementary statement provide a few additional facts. Sauve claims he has been illegally detained since July 15, 2009. He explains that his plea (presumably his plea to the state criminal charge that resulted in the probationary sentence which is now the subject of a motion for probation revocation) was conditioned on an agreement that he would challenge certain sentencing enhancements and concurrent sentences. He advises that he drew a jury and intended to proceed to trial. His lawyer refused to turn over paperwork and he was denied access to a law library and a fair trial. Sauve claims the treatment he received causes him great emotional distress. (Id. ¶ IV; Doc. 22-2.)

In his supplemental document Sauve explains how this entire situation has led to disciplinary problems which further undermine his emotional health. Sauve feels that his disciplinary proceedings were conducted unfairly and he was denied leave to call witnesses or testify, among other shortcomings in the process. His complaints and grievances directed to

Sheriff Joyce and Major Breton have been largely ignored or responded to by other jail officials. Sauve also explains that he is a Department of Corrections prisoner, thus apparently implicating the Commissioner in the jail's failure to provide law library access and adequate grievance procedures. For purposes of analyzing the defendants' motions to dismiss, I have considered both the allegations in the original complaint and those in the proposed amended complaint.

### DISCUSSION

Commissioner Ponte has moved to dismiss the complaint as against him, maintaining that his authority over county jails is statutorily limited to promulgating standards for "maintaining safe, healthful and secure facilities." (Comm'r Ponte's Mot. To Dismiss at 2, quoting 34-A M.R.S. § 1208(1)). According to Commissioner Ponte, the sheriff of a county has custody and charge of the county jail and all prisoners in the jail. (Id., citing 30-A M.R.S. § 1501). Additionally Ponte notes that while denial of access to the courts is actionable under 42 U.S.C. § 1983, even if Ponte had some supervisory authority over jails, he could be found liable only for his own conduct and not on the basis of respondeat superior for the actions of his subordinates. (Id., citing Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1948 (2009); Leavitt v. Corr. Med. Servs., 645 F.3d 484, 502 (1st Cir. 2011).

Sauve asserts that he is a Department of Corrections prisoner in his amended complaint, but he never explains what he means by that conclusory allegation; he is clearly confined in a county jail. It appears, as best I can discern from the few facts he has provided, that Sauve is at the Cumberland County Jail awaiting resolution of a motion to revoke his probation, having been extradited from Alaska to answer to the charges. To the extent the complaint and the responses Sauve has filed might be read to assert an official capacity claim against Ponte, such a claim

3

would be tantamount to a suit against the State of Maine itself, and the Eleventh Amendment prevents a state or its agencies from being sued in federal court for monetary damages. Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 (1st Cir. 2009). To the extent the official capacity claim against Ponte could be viewed as directed at Sauve's claim for injunctive relief, he has absolutely failed to identify any standard or policy promulgated by the Commissioner of Corrections which has led to his denial of access to the courts. Both his original complaint and his proposed amended complaint identify claimed adequacies with the jail's provision of legal materials, not with any statewide policy. The claim against Ponte should be dismissed and to the extent the amended complaint is directed to him, the motion to amend should be denied.

Turning to the claims against Joyce and Breton, Joyce has moved to dismiss claiming that, at best, the complaint contains nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusations." (Sheriff Joyce's Mot. to Dismiss, Doc. No. 20, quoting Iqbal, 129 S.Ct. at 1949). Breton, through Joyce's counsel, has opposed the motion to amend on the same grounds. (Resp. in Opp'n to Mot. to Amend at 2, Doc. No. 31.) For his part, Sauve explains the essence of his complaint in his reply to the opposition to his motion to amend. (Doc. No. 33.) According to Sauve: "The responsibility to provide adequate and meaningful access to the courts lie with the policy makers, Ponte, Joyce, Breton, and no policy exists for the lower level employees to follow." (Id. at 1.) Sauve explains that this conundrum demonstrates why he has not sued any corrections officials who have actually addressed his grievances and complaints, because their conduct alone is not the source of the unconstitutional treatment he has received regarding access to legal materials and the courts. (Id.)

4

In <u>Bounds v. Smith</u>, the United States Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). In a subsequent case, <u>Lewis v. Casey</u>, the Court explained:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," *id*., at 823 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

518 U.S. 343, 351 (1996); <u>see</u> <u>also</u> <u>Boivin v. Black</u>, 225 F.3d 36, 42 (1st Cir. 2000). This right of access to courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." <u>Casey</u>, 518 U.S. at 355.

Assuming that Joyce and Breton are the relevant policy makers regarding access to legal materials at the Cumberland County Jail, both Sauve's original complaint and his proposed amended complaint fall woefully short of the mark, not because of any technical failure to cite legal precedent or comply with court procedure, but because of his complete failure to adequately explain what access to the state courts or this court has been denied to him. Sauve's own

5

submissions show that in July 2011 he was able to complete the necessary form regarding indigency and declined the appointment of counsel in the state courts, other than in the capacity of co-counsel. (Doc. No. 1-7.) He has clearly been able to access the state courts.

Sauve's own allegations are that he made numerous requests for case law, a notary, and a pen, and that eventually, after grievances and repeated requests, he "gained a little." (Compl. ¶ II.C.) The exhibits he submits in support of his original complaint (Doc. Nos. 1-1—1-6) indicate that legal materials are to be made available to him through the county jail law librarian and that he has not asked for any copies of cases or other materials. The documents also reveal that, although there have been incidents surrounding his use or abuse of pens, he has been able to file legal materials and, if he can verify the need for copies, he can obtain copies of the materials he files. Nowhere does Sauve explain in plain English how he has actually been denied access to the courts, such as a missed deadline for filing a pleading or other court related problem. His complaint is heavy with conclusory statements about the inadequacies of the county jail's provision of legal materials for the self-represented litigant, but absolutely devoid of any explanation as to what problems those inadequacies have created in terms of his own access to the Maine state courts or this court. I note, for instance, that Sauve has prosecuted this lawsuit in a legible, timely and complete matter even though confronted with numerous filings in opposition and related deadlines.

In his amended complaint, Sauve complains that his lawyer refused to turn over legal paperwork to him, causing him great emotional distress. (Proposed Am. Compl. ¶ IV.) This conduct can hardly be the responsibility of Joyce, Breton, or, for that matter, Ponte. Sauve also complains in the proposed amended complaint about perceived inadequacies with Breton and

6

Joyce's responses to his grievances, but the involvement of jail officials in reviewing and issuing decisions on inmate appeals within the grievance system does not provide a basis for imposing constitutional liability on them as policy makers. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); Lamon v. Junious, No. 1:09-cv-00484-GSA PC, 2009 WL 3248173, *4-5 (E.D. Cal. Oct. 8, 2009) ("screening order") ("[T]he involvement of prison personnel in reviewing and issuing decisions on Plaintiff's inmate appeals does not provide a basis for the imposition of liability on them for the conduct of others."). Sauve has failed to explain what jail policy regarding access to legal materials has specifically led to his denial of access to the courts. He alleges through his own exhibits that he has been required to request legal materials through the jail librarian and has been required to write some of his pleadings in pencil, apparently two of the policies of which he complains, but he has failed to demonstrate in his complaint how these restrictions have impeded his meaningful access to the courts. He has not demonstrated one single instance where he was unable to enter timely pleadings with the court or suffered a legal setback because of his inability to obtain legal materials.

## CONCLUSION

Based upon the foregoing, I recommend that the defendants' motions to dismiss be granted and the motion to amend be denied as futile.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought,

7

together with a supporting memorandum, within twenty-eight (28) days of being served with a copy thereof. A responsive memorandum shall be filed within twenty-eight (28) days after the filing of the objection.

       Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

                                           /s/ Margaret J. Kravchuk
                                           U.S. Magistrate Judge

January 31, 2012